UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| FREDERICK MATTHEWS, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No.   3:24-CV-259-DCLC-DCP |
| JIM CASEY, STACY OAKS, WILLIAM BLACKERBY, and JERRY SPANGLER, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

Plaintiff, a Tennessee Department of Correction ("TDOC") prisoner housed in the Morgan County Correctional Complex ("MCCX"), filed a complaint for violation of 42 U.S.C. § 1983 "challenging [the] conditions, treatment, and confinement" of mentally ill patients in a high security area of MCCX [Doc. 1], a motion for leave to proceed *in forma pauperis* [Doc. 2], and a prisoner trust fund account statement [Doc. 3].  For the reasons set forth below, (1) Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2] will be **GRANTED**; and (2) this action will be **DISMISSED** because the complaint fails to state a claim upon which relief may be granted under § 1983.

I.      FILING FEE

It appears from Plaintiff's motion and prisoner trust account statement [Docs. 2, 3] that he cannot pay the filing fee in one lump sum.  Accordingly, his motion for leave to proceed *in forma pauperis* [Doc. 2] is **GRANTED**.

Plaintiff is **ASSESSED** the civil filing fee of $350.00.  The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite

130, Knoxville, Tennessee 37902, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of his preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred and fifty dollars ($350.00) has been paid to the Clerk. 28 U.S.C. §§ 1914(a), 1915(b)(2). To ensure compliance with this fee collection procedure, the Clerk is **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

To ensure compliance with this procedure, the Clerk is **DIRECTED** to provide a copy of this memorandum and order to both the custodian of inmate accounts at Plaintiff's current institution and the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.     COMPLAINT SCREENING

### A.  Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*,

2

Case 3:24-cv-00259-DCLC-DCP     Document 6     Filed 02/21/25     Page 2 of 12     PageID #: 36

550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive a PLRA review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

B.     Allegations

As set forth above, Plaintiff is "challenging [the] conditions, treatment, and confinement" of mentally ill inmates who are housed in a high security area at MCCX, all of which he claims violates the Eighth Amendment [Doc. 1 p. 3–4]. Plaintiff sues all Defendants in their official capacities and asserts that (1) Defendant Casey is the Mental Health Coordinator of the TDOC and responsible for ensuring "that all mental health inmates receive adequate mental health services"; (2) Defendant Oaks is the Warden of Treatment at MCCX and responsible "for making sure all inmates at [MCCX] are receiving adequate treatment" and that the staff is adequate and trained for treatment of high security mentally ill inmates; (3) Defendant Spangler is the Mental Health Administrator at MCCX and responsible for making sure the mental health program adequately operates "with proper programming, assessments, evaluations, transfers, therapy, and training of

3

counse[e]l[o]rs and therapist[s]"; and (4) Defendant Blackerby is the MCCX Clinical Director "responsible for making sure [the] mental health program" has adequate therapy groups, that mental health inmates are evaluated and transferred, and that the counselors and therapists are adequately trained [*Id.* at 4–5].

Plaintiff then states that he is a mental health inmate housed in a high security area at MCCX and sets forth his claims arising out of that confinement in ten numbered paragraphs that the Court summarizes as follows:

1. The inmates do not receive daily group therapy or recreation therapy (that is required at least five times a week) because of insufficient staff and a failure to provide treatment;

2. Because the mental health high security area does not have adequate staffing, the inmates do not get sufficient outdoor recreation. Plaintiff specifically claims that officers sometimes do not allow the inmates to go outside for at least seven days, and the inmates have been "confined twenty-four hours a day in cells without any out-of-cell activities";

3. The officers in the mental health high security area have not been trained to work in a "mental health pod around seriously mental[ly] ill patients on high security" and therefore sometimes "provoke and take advantage" of the inmates;

4. Prison officials "fail[] to investigate, discipline, and address staff[] misconduct" directed towards the mentally ill inmates, including staff encouraging inmates to create disturbances, self-harm, or act up, and staff falsely accusing inmates of disciplinary behaviors;

5. The inmates do not have adequate "cleaning chemicals[] and supplies," resulting in mold around shower drains, feces around the toilet, flies and pests in cells, and dust on floors;

6. Prison officers "do[] not property evaluate, screen, and reclass" the mentally inmates "as required" and instead keep them in the high security area;

7. Prison officers do not "allow inmates housed in a high security mental health program to purchase any writing utensils, and [the inmates] are often unable to get access to any writing utensils," which means that inmates often cannot report misconduct or unconstitutional acts;

4

8. Prison officers "tr[y] to charge, convict, and pros[e]cute" mentally ill inmates on high security for acts that are due to their mental disorders and/or the conditions of their confinement;

9. Counselors and therapists for the mentally ill inmates do not receive adequate training, and their sessions with inmates are quick because they do not want to speak to the mentally ill inmates; and

10. Mentally ill inmates often receive discipline and write ups for behaviors that are due to their conditions and treatment at MCCX, and they do not receive evaluations by mental health staff prior to discipline, even though unspecified "procedures" require this.

[*Id.* at 5–8]. As relief, Plaintiff requests preliminary injunctions related to these conditions [*Id.* at 9–11].

C. Analysis

First, as Plaintiff has sued Defendants only in their official capacities and seeks only a preliminary injunction, the Court construes the complaint to seek relief under the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), which provides that a plaintiff may "bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations." *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) (citing *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)). "To determine if *Ex Parte Young* applies, [the Court] 'need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id*. (quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003)) (internal citation and quotation marks omitted). For the reasons set forth below, Plaintiff's complaint does not allow the Court to plausibly infer any ongoing violation of his federal constitutional rights.

1. **Adequacy of Mental Health Treatment**

In in claims 1 and 9 of his complaint, Plaintiff challenges the adequacy of the mental health care treatment the mentally ill inmates in the high security area are receiving [Doc. 1 p. 5, 7]. A

5

prison authority's deliberate indifference to an inmate's serious medical need violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). Prison medical personnel or officials may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or by "interfer[ing] with treatment once prescribed." *Id.* at 104–5. A medical provider violates a prisoner's Eighth Amendment right through actions that are "sufficiently harmful to evidence deliberate indifference to [the prisoner's] serious medical needs." *Id.* at 106. Deliberate indifference is equivalent to "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Under this standard, a state actor is not liable under § 1983 unless he (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Id.* at 847.

Allegations that a prisoner did not receive the medical treatment he wanted or received a misdiagnosis do not state a claim for violation of the Eighth Amendment. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (holding that "[a] patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983). Thus, where a prisoner received medical care, his disagreement with the adequacy of that care generally does not rise to the level of a constitutional violation. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1996) (noting that "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"). But medical care that is "so woefully inadequate as to amount to no treatment at all" violates the Eighth Amendment. *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001).

Plaintiff's allegations that the mentally ill inmates do not receive daily group therapy or recreation therapy five times a week, and that the inmates' counseling and therapy sessions are quick, do not allow the Court to plausibly infer that the mental health treatment Plaintiff is receiving is so inadequate to amount to no treatment at all. Likewise, Plaintiff's conclusory

6

allegation that the counselors and therapists are not adequately trained does not allow the Court to plausibly infer a violation of his constitutional rights.

Accordingly, Plaintiff's allegations regarding the adequacy of the mental health care fail to state a claim for violation of § 1983.

### 2. Recreation and Lockdowns

In claim 2 of his complaint, Plaintiff alleges that due to inadequate staffing, the mentally ill inmates in high security do not get enough outdoor recreation [*Id.* at 5]. To support this assertion, Plaintiff states that officers (1) sometimes do not allow the inmates outside recreation for at least seven days and (2) have confined the inmates in their cells for twenty-four hours [*Id.*].

Prisoners are entitled to sufficient exercise opportunities to maintain reasonably good physical and mental health. *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983). While the Sixth Circuit does not require a certain amount of exercise for prisoners, it has held that "'a total or near-total deprivation of exercise or recreational opportunity, without penological justification,'" may violate the Eighth Amendment. *Rodgers v. Jabe*, 43 F.3d 1082, 1086–88 (6th Cir. 1995). But neither the Sixth Circuit nor the Supreme Court has "set a minimum amount of time a prisoner must have access to outdoor recreation." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Thus, Courts in this circuit and other circuits routinely dismiss claims arising out of a lack of outdoor recreational opportunities. *See, e.g.*, *Jeffries v. Williamson Cnty. Jail*, No. 3:18-CV-00228, 2018 WL 4778197, at 4–5 (M.D. Tenn. Oct. 2, 2018) (collecting cases).

As Plaintiff's complaint does not allow the Court to plausibly infer that he completely or nearly completely lacks exercise or recreational opportunities, Plaintiff's allegations regarding denials of outdoor recreation fail to state a claim upon which relief may be granted under § 1983. And while Plaintiff also claims that prison officials have subjected the mentally ill inmates in the high security area to twenty-four-hour lockdowns, Plaintiff sets forth no facts about these

7

lockdowns from which the Court can plausibly infer that they caused an extreme deprivation of a life necessity that violated his Eighth Amendment rights. *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992) (providing that only allegations of "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities" support a cognizable Eighth Amendment conditions-of-confinement claim (citations and quotations omitted)).[1]

Accordingly, Plaintiff's allegations regarding recreation and lockdowns fail to state a claim upon which relief may be granted under § 1983 for violation of the Eighth Amendment.

### 3. Investigation and Discipline of Officers

In claim 4 of his complaint, Plaintiff states that prison officials failed to investigate and discipline staff misconduct aimed at the mentally ill inmates in high security [*Id.* at 6]. But Plaintiff does not have a constitutional right to an investigation or to ensure officers face consequences for certain actions. *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation." (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (noting that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"))). Accordingly, this allegation fails to state a claim upon which relief may be granted under § 1983.

### 4. Officer Misconduct

In claims 3 and 4 of his complaint, Plaintiff asserts that officers engage in misconduct aimed at the mentally ill inmates housed in high security, including (1) "provok[ing] and tak[ing] advantage" of the inmates, (2) encouraging inmates to create disturbances, self-harm, or act up, and (3) falsely accusing inmates of disciplinary behaviors [*Id.* at 6]. However, accepting as true

---

[1] To the extent that Plaintiff alleges that these lockdowns violated his due process rights, the Court addresses this allegation below.

Plaintiff's allegations that prison officials have mistreated mentally ill inmates in the ways that Plaintiff alleges due to a lack of training that is attributable to any Defendant(s), Plaintiff does not set forth any facts from which the Court can plausibly infer that any prison officer committed any act of misconduct that violated Plaintiff's constitutional rights, and Plaintiff does not have standing to assert the rights of other prisoners. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (holding that a "a prisoner who initiates a civil action challenging certain conditions at a prison facility in his individual capacity is limited to asserting alleged violations of his own constitutional rights and . . . lacks standing to assert the constitutional rights of other prisoners").

Accordingly, Plaintiff's allegations regarding officer misconduct towards mentally ill inmates fail to state a plausible claim for violation of Plaintiff's constitutional rights.

### 5. Cleaning Products

In claim 5 of his complaint, Plaintiff asserts that the mentally ill inmates housed in high security do not have adequate "cleaning chemicals[] and supplies," resulting in mold around shower drains, feces around the toilet, flies and pests in cells, and dust on floors. Again, however, Plaintiff does not allege which, if any, of these conditions he personally experienced, and he cannot assert the rights of other prisoners. *Id.* Regardless, even if the Court assumes that Plaintiff was exposed to all these conditions, Plaintiff has not set forth facts from which the Court can plausibly infer that any of the alleged conditions amounts to an extreme deprivation of a life necessity, such that it could rise to the level of an Eighth Amendment violation. *Hudson*, 503 U.S. at 8–9.

Accordingly, Plaintiff's allegations regarding cleaning supplies fail to state a plausible claim for violation of § 1983.

### 6. Lockdowns, Evaluation, and Reclass

As set forth above, in claim 2 of his complaint, Plaintiff alleges that the mentally ill inmates in the high security area have been subjected to twenty-four-hour lockdowns [*Id.* at 5]. Also, in

9

claims 6, 8, and 10 of his complaint, Plaintiff claims that prison officers "do[] not property evaluate, screen, and reclass" the mentally inmates in the high security area and instead keep them in the high security area, and that they subject mentally ill inmates to discipline and criminal prosecution without first evaluating whether the underlying behavior is attributable to their mental illness or the conditions of their confinement [*Id.* at 6, 7, 8].[2] The Court liberally construes these allegations to assert claims for violation of Plaintiff's right to due process. However, Plaintiff does not set forth any facts from which the Court can plausibly infer any violation of Plaintiff's due process rights based on these allegations.

Specifically, in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court found that a prisoner is entitled to the protections of due process only when a sanction "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998). The *Sandin* Court concluded that mere placement in segregation did not implicate a liberty interest because that placement did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

While Plaintiff alleges that prison officials have subjected mentally ill inmates to twenty-four-hour lockdowns, he has not set forth any facts from which the Court can plausibly infer that this confinement amounted to an unusual or substantial hardship under *Sandin*. *Warfield v.*

---

[2] Plaintiff also alleges that evaluation, screening, and reclass of the mentally ill inmates is "required" and that "procedures" require prison staff to determine whether a prisoner's behavior underlying a disciplinary charge is due to his mental disability [*Id.* at 6, 8]. To the extent that these allegations seek relief for violations of TDOC policy or procedure, they are not cognizable under § 1983, which provides redress for violations of federal law, not state law or internal prison policies. *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 322 (6th Cir. 2023) ("Alone, the failure to follow an internal policy does not give rise to a deliberate indifference claim." (citing *Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 578 (6th Cir. 2020))); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citation omitted).

*Washburn*, No. 3:19-CV-00650, 2020 WL 70881, at *3 (M.D. Tenn. Jan. 7, 2020) (finding that the plaintiff's "alleged 40-day confinement in punitive segregation" was not an "'atypical and significant hardship'" under *Sandin* where the plaintiff did not describe any of the restrictions to which he was subjected in that segregation) (citations omitted). Nor has Plaintiff set forth any facts from which the Court can plausibly infer that any prison official (1) subjected him to any discipline that amounted to an atypical and significant hardship without due process or (2) brought criminal charges against him[3] without due process. *Newsom*, 888 F.2d at 381.

Accordingly, Plaintiff's complaint fails to state a claim for violation of his due process rights.

### 7. Writing Utensils

In claim 7 of his complaint, Plaintiff asserts that mentally ill inmates in the high security area cannot purchase writing utensils, and that this means that they are unable to report misconduct or unconstitutional acts. But prisoners do not have a constitutional right to file grievances. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (providing that a prisoner has "no inherent constitutional right to an effective prison grievance procedure"). And as it is apparent that Plaintiff used a writing utensil for his complaint and does not set forth any facts suggesting that the alleged lack of access to writing utensil has prejudiced him in any way, he fails to adequately allege a violation of his right to access courts based on this condition. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (holding that a plaintiff must plead and prove that his meritorious claims have

---

[3] Also, even if Plaintiff sought to bring claims for § 1983 relief arising out of pending criminal charges against him, under the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), a federal court must refrain from interfering in a state criminal case when (1) a state proceeding is ongoing; (2) an important state interest is involved; and (3) the party has an adequate opportunity to raise constitutional challenges in the state proceeding. *Id.* at 43–45, 53–54.

11

been prejudiced by the alleged denial of adequate legal resources to state a claim for denial of access to courts (citing *Lewis v. Casey*, 518 U.S. 343 (1996)); *Newsom*, 888 F.2d at 381.

Accordingly, Plaintiff's allegation regarding the lack of access to writing utensils fails to state a plausible claim for violation of § 1983.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983 as to any Defendant;

6. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

7. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER**.

**ENTER**:

s/Clifton L. Corker
United States District Judge